UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------
FEMA TEST ANSWERS, LLC,

                      Plaintiff,            **MEMORANDUM & ORDER**
                                                              22-CV-1108 (MKB)

            v.

FOREST SMITH and SAMIEN BISSESSAR,

                      Defendants.
---------------------------------------------------------------
SAMIEN BISSESSAR,

       Counterclaim and Third-Party Plaintiff,

            v.

FEMA TEST ANSWERS, LLC,

                      Counterclaim Defendant,
       and
DAVID PICKELHAUPT,

                      Third-Party Defendant.
---------------------------------------------------------------
MARGO K. BRODIE, United States District Judge:

      Plaintiff FEMA Test Answers, LLC commenced the above-captioned action on March 1, 2022, against Defendants Forest Smith and Samien Bissessar, asserting copyright infringement under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* ("Copyright Act") and alleging that Defendants copied the format Plaintiff uses in its study guides. (Compl., Docket Entry No. 1.) On July 14, 2022, Plaintiff filed an Amended Complaint asserting the same claim. (Am. Compl.,

Docket Entry No. 18.) On October 13, 2023, Smith moved to dismiss the Amended Complaint, and Plaintiff opposed the motion.[1]

For the reasons explained below, the Court grants Smith's motion to dismiss and grants Plaintiff leave to file a second amended complaint.

## I. Background

### a. Factual background

Plaintiff is the creator of the FEMA Study Guide, an online study guide used by students to assist them in preparing for the exams required to pass the Federal Emergency Management Agency's ("FEMA") Independent Study Courses.[2] (Am. Compl. ¶¶ 2, 8.) FEMA selects the questions for its exams at random from a database of potential questions, which is not available as a collection on FEMA's website. (*Id.* ¶¶ 11, 13.) For each Independent Study Course, the FEMA Study Guide has collected all the multiple-choice questions and answers that FEMA could potentially use to conduct its examinations for that course. (*Id.* ¶ 12.) The FEMA Study Guide then modifies the FEMA answers in two ways: (1) the FEMA Study Guide identifies the answer for each FEMA question by highlighting the correct answer in bold and red; and (2) the FEMA Study Guide adds a reference next to each correct answer, which points students to the location in the course materials that is the source for the correct answer (collectively, the "Study Guide Additions"). (*Id.* ¶¶ 12, 14–16.)

---

[1] (Def. Smith's Mot. to Dismiss ("Def.'s Mot."), Docket Entry No. 46; Def. Smith's Mem. in Supp. of Def.'s Mot. ("Def.'s Mem."), Docket Entry No. 46-1; Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n"), Docket Entry No. 54; Def. Smith's Reply in Supp. of Def.'s Mot. ("Def.'s Reply"), Docket Entry No. 53.)

[2] For purposes of this Memorandum and Order, the Court assumes as true the facts as alleged in the Amended Complaint.

Plaintiff alleges the Study Guide Additions are not part of FEMA's study materials or FEMA's exams, but rather were created by David Pickelhaupt and are the subject of Copyright Registration No. TXu001809215 (the "'215 Registration"), dated May 3, 2012, which Pickelhaupt owns. (*Id.* ¶¶ 18–19.) Plaintiff uses the Study Guide Additions under an exclusive license from Pickelhaupt, which provides Plaintiff the right to enforce the '215 Registration and any other available rights under the Copyright Act.[3] (*Id.* ¶ 20.)

Plaintiff contends that (1) Defendants each market and sell competing study guides for FEMA's Independent Study Courses, which include the same process of highlighting the correct answers, but highlights the answers in bold and blue rather than in bold and red, (*id.* ¶¶ 23, 27); (2) Defendants have previously used Plaintiff's review references in their competing study guides on their sites and continue to do so, (*id.* ¶ 28); and (3) Defendants have each purchased the FEMA Study Guide and then, without authorization, copied the Study Guide Additions and are using them to market and sell their competing study guides, (*id.* ¶¶ 23–32).

### a. Procedural background

On March 1, 2022, Plaintiff commenced this action, (Compl.), and on July 14, 2022, Plaintiff filed an Amended Complaint, alleging Defendants violated 17 U.S.C. § 501 by infringing on the '215 Registration. (Am. Compl.) On January 3, 2023, Bissessar answered the Amended Complaint.[4] (Bissessar Answer.) On October 13, 2023, Smith moved to dismiss the

---

[3] Plaintiff also alleges that the license provides Plaintiff with "an exclusive right to reproduce, publicly perform, display, transmit, and distribute the Study Guide Additions, including translating, altering, modifying, and creating derivative works." (Am. Compl. ¶ 20.)

[4] In his Answer, Bissessar asserted counterclaims against Plaintiff and third-party claims against Pickelhaupt, seeking a declaratory judgment that (1) he is not infringing the '215 Registration, (2) the '215 Registration is not a valid copyright, and (3) Bissessar is therefore entitled to costs and attorneys' fees against Plaintiff pursuant to 17 U.S.C. § 505. (Bissessar Answer to Am. Compl. ("Bissessar Answer"), Docket Entry No. 25.)

3

Amended Complaint for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[5] (Def.'s Mot.) On December 12, 2023, Plaintiff filed its opposition to the motion to dismiss, and on December 18, 2023, Smith replied. (Pl.'s Opp'n; Def.'s Reply.)

## II. Discussion

### a. Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court "must construe [the Complaint] liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiff['s] favor." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021) (citing *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019)); *see also Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bacon v. Phelps*, 961 F.3d 533, 540 (2d Cir. 2020) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024) (quoting *Matson*, 631 F.3d at 63); *Cavello Bay Reinsurance Ltd. v. Shubin Stein*, 986 F.3d 161, 165 (2d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556

---

[5] After Smith filed his motion to dismiss, Bissessar requested a pre-motion conference in anticipation of his motion to permit him to join Smith's motion to dismiss. (Bissessar Letter for Pre-Mot. Conf., Docket Entry No. 52.) The Court denied Bissessar's motion to join Smith's motion to dismiss because Bissessar had already answered the Amended Complaint. (Order dated Dec. 21, 2023.)

4

U.S. at 678; *see also Roe*, 91 F.4th at 651 ("Although all factual allegations contained in the complaint are assumed to be true, this rule does not extend 'to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" (quoting *Iqbal*, 556 U.S. at 678)).

    **b.  Copyright infringement**

        **i.  Scope of the '215 Registration**

The parties disagree regarding the scope of the '215 Registration. Plaintiff alleges both Study Guide Additions, (1) the highlighting of the correct answer in bold and red, and (2) the references to which portions of the course materials to review, are the subject of the '215 Registration.

Smith argues in his reply that the '215 Registration provides copyright protection only for the identification of the correct multiple-choice answers in red. (Def.'s Reply 5–7.) He contends that Plaintiff is therefore prohibited from arguing that the scope of the copyright protection extends to the "selection and arrangement of questions and answers, the manner in which correct answers are identified, and Pickelhaupt's recommendation" as to what portion of the course materials to review. (*Id.* at 5–6 (quoting Pl.'s Opp'n 4).) In support, Smith relies on documents submitted as exhibits attached to his Reply, which consist of several filings with the U.S. Copyright Office. (*See* Def.'s Reply 6–7 & n.3; Copy of E-File Appl. with U.S. Copyright Office ("E-File Appl."), annexed to Def.'s Reply as Ex. 2, Docket Entry No. 53-3; Copy of Copyright Deposit ("Deposit Copy"), annexed to Def.'s Reply as Ex. 4, Docket Entry No. 53-5.)[6]

---

[6] The Court may take judicial notice of documents published in the Copyright Office's registry when ruling on a motion to dismiss. *See Island Software & Comput. Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005) ("The district court was entitled to take judicial notice of [the plaintiff's] federal copyright registrations, as published in the Copyright Office's registry."); *Peretti Acuti v. Authentic Brands Grp. LLC*, No. 20-CV-6570, 2021 WL 3604382, at *2 n.4 (S.D.N.Y. Aug. 13, 2021) ("Judicial notice is properly taken of filings with

Smith points to the deposit copy for the '215 Registration, which includes a series of questions titled "IS-1 Emergency Manager: An Orientation to the Position" with multiple-choice answers. (Def.'s Reply 7; Deposit Copy.) He contends that each of the questions has bolded red text to indicate the correct answer, but the bolded red answers do not include accompanying references to sections to review, and therefore supports his argument. (Def.'s Reply 7.) Smith also points to a copy of Pickelhaupt's e-file application for a copyright. (E-File Appl.) In the "Author Created" line of the application, Pickelhaupt listed "text." (*Id.* at 4.) Pickelhaupt also stated in the application "[I] would like to copyrite [sic] my text works (digital copys [sic] of my work named) 'Fema Test Answers QuickStudy Quides [sic]'." (*Id.* at 5.)

The deposit copy indicates that the copyrighted version of Plaintiff's FEMA Study Guide does not include references to the sections of the course materials that would be helpful to review. It is not clear from the deposit copy, however, that Pickelhaupt "did not seek copyright protection for compiling the multiple[-]choice questions that FEMA created, . . . [or] for the arrangement of the multiple choice questions." (Def.'s Reply 7 (emphasis omitted).) The e-file application indicates Pickelhaupt sought copyright protection for author-created "text," (E-File Appl. 4), and the copyright deposit includes the full text of the questions and multiple-choice answers, (Deposit Copy).

Based on the filings with the U.S. Copyright Office currently before the Court, Plaintiff is not precluded from arguing that the scope of the '215 Registration extends to the selection and arrangement of questions and answers and the manner in which correct answers are identified. *FireSabre Consulting LLC v. Sheehy*, No. 11-CV-4719, 2013 WL 5420977, at *6 (S.D.N.Y.

---

the Copyright Office, and 'the [c]ourt may . . . consider matters of which judicial notice may be taken' in ruling on a motion to dismiss." (first citing *Island Software*, 413 F.3d at 261, and then quoting *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008))).

6

Sept. 26, 2013) (concluding there was "no reason to exclude from the scope of the copyright any component [the p]laintiff created that [was] visible in the deposit materials"). However, the Court does not consider Plaintiff's arguments that the '215 Registration covers the references to relevant sections of the course materials, because the deposit copy does not indicate that the copyrighted material includes the references. *See, e.g.*, *Griffin v. Sheeran*, No. 17-CV-5221, 2020 WL 5522835, at *1 (S.D.N.Y. Mar. 24, 2020) ("[T]he scope of the copyright is limited by the deposit copy." (alteration in original) (quoting *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1063 (9th Cir. 2020) (en banc))).

### ii. Plaintiff fails to state a claim

Smith argues that the Court should dismiss the Amended Complaint because it fails to allege that the Study Guide Additions are original works as required under the Copyright Act. (Def.'s Mem. 5–6.) In support, Smith argues first, that the potential multiple-choice questions, the answers, and the FEMA Study Guides are all in the public domain, and therefore Plaintiff does not play a role in the creation of any of the study materials. (*Id.* at 6.) Second, Smith argues that even though the Study Guide Additions highlight the correct answer to the potential multiple-choice questions and direct potential test takers to the relevant section of the FEMA Study Guides, the allegations in the Amended Complaint still fail to show the requisite level of originality because FEMA has already determined the correct answer and FEMA creates the Independent Study Courses and Study Guides to which Plaintiff directs the potential test takers. (*Id.* at 6–7.) Smith contends that Plaintiff therefore only expended effort in making the Study Guide Additions useful, but that "Plaintiff has expended no intellectual effort in making its work original," as required to assert a claim under the Copyright Act. (*Id.* at 7–12.)

Plaintiff argues that originality is a question of fact that should not be addressed at the motion to dismiss stage. (Pl.'s Opp'n 5–6.) Plaintiff also argues that even if it was proper to

7

address this question at the motion to dismiss stage, the FEMA Study Guide is an original work because (1) demonstrating originality is subject to an "extremely low" standard, (*id.* at 6–7), (2) factual compilations are copyrightable, (*id.* at 7–8), and (3) the materials Pickelhaupt contributed to the FEMA Study Guide involved selecting particular iterations of questions and answers, arranging them in a particular format, choosing a means of easily identifying the correct answers to the reviewer, and including reference notes to aid those preparing for FEMA exams to review portions of the Independent Study Course materials he believed would be most useful, which was not a "mechanical exercise" but rather "each choice was a creative determination as to how to organize and prepare a study guide," (*id.* at 9–11).

"To establish a claim of copyright infringement, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 66 (2d Cir. 2020) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). "The Copyright Act of 1976 defines copyrightable subject matter as 'original works of authorship fixed in any tangible medium of expression.'" *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 580 U.S. 405, 411 (2017) (quoting 17 U.S.C. § 102(a)).

"To qualify for copyright protection, a work must be original to the author. Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Acuff-Rose Music, Inc. v. Jostens, Inc.*, 155 F.3d 140, 143 (2d Cir. 1998) (quoting *Feist Publ'ns*, 499 U.S. at 345); *see also* 17 U.S.C. § 102. "[T]he requisite level of creativity is extremely low; even a slight amount will suffice." *Feist Publ'ns*, 499 U.S. at 345. "Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying." *Id.* "The validity of the copyright

8

'depends upon originality.'" *Abdin*, 971 F.3d at 69 n.8 (quoting *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 109 (2d Cir. 2001)). "A copyright is invalid only if the subject work shows no originality — that is, if the copyrighted work is in no way a 'distinguishable variation' on something already in the public domain." *Re-Alco Indus. v. Nat'l Ctr. for Health Educ., Inc.*, 812 F. Supp. 387, 393 (S.D.N.Y. 1993) (quoting *Alfred Bell & Co. v. Catalda Fine Arts*, 191 F.2d 99, 102 (2d Cir. 1951)). At the motion to dismiss stage, "the question . . . is whether [the movant has] made sufficiently plausible allegations to justify the creation of an evidentiary record on the question of originality in the first place." *King-Devick Test Inc. v. NYU Langone Hosps.*, No. 17-CV-9307, 2019 WL 78986, at *4 (S.D.N.Y. Jan. 2, 2019).[7]

"Production of a certificate of registration made before or within five years after first publication of the work constitutes prima facie evidence of the validity of the copyright." *Urbont v. Sony Music Ent.*, 831 F.3d 80, 88–89 (2d Cir. 2016) (first citing 17 U.S.C. § 410(c); and then citing *Hamil Am., Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999)). "While '[a] certificate of copyright registration is prima facie evidence of ownership of a valid copyright, . . . the alleged infringer may rebut that presumption." *Mackenzie Architects, PC v. VLG Real Ests.*

---

[7] A copyright registration may also be declared invalid where the registration was procured by fraud. *King-Devick Test Inc. v. NYU Langone Hosps.*, No. 17-CV-9307, 2019 WL 78986, at *6–7 (S.D.N.Y. Jan. 2, 2019) ("Where an author has procured a copyright registration by fraud, the registration confers no presumption of validity."); *Mackenzie Architects, PC v. VLG Real Ests. Devs., LLC*, No. 15-CV-1105, 2016 WL 4703736, at *13 (N.D.N.Y. Sept. 8, 2016) ("Only the 'knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitute reason for holding the registration invalid and thus incapable of supporting an infringement action . . . or denying enforcement on the grounds of unclean hands[.]'" (alterations in original) (quoting *Eckes v. Card Prices Update*, 736 F.2d 859, 861–62 (2d Cir. 1984))). "A party seeking to establish such a fraud must show at a minimum that the author's 'application for copyright registration [was] factually inaccurate, that the inaccuracies were willful or deliberate, and that the Copyright Office relied on those misrepresentations.'" *King-Devick Test*, 2019 WL 78986, at *6 (alteration in original) (quoting *Lennon v. Seaman*, 84 F. Supp. 2d 522, 525 (S.D.N.Y. 2000)); *Mackenzie Architects*, 2016 WL 4703736, at *13 (same). Plaintiff does not argue that Pickelhaupt fraudulently procured his copyright registration.

9

*Devs., LLC*, No. 15-CV-1105, 2016 WL 4703736, at *13 (N.D.N.Y. Sept. 8, 2016) (alterations in original) (quoting *Scholz Design, Inc. v. Sard Custom Homes, LLC*, 691 F.3d 182, 186 (2d Cir. 2012)). "[T]he party challenging the validity of the copyright [registration] has the burden to prove the contrary." *Urbont*, 831 F.3d at 89 (quoting *Hamil Am.*, 193 F.3d at 98). "That burden may be met by 'other evidence in the record [that] casts doubt on' the registration's validity." *16 Casa Duse, LLC v. Merkin*, No. 12-CV-3492, 2013 WL 5510770, at *11 (S.D.N.Y. Sept. 27, 2013) (alteration in original) (quoting *Fonar Corp. v. Domenick*, 105 F.3d 99, 104 (2d Cir. 1997)), *aff'd in relevant part*, 791 F.3d 247 (2d Cir. 2015); *see also Est. of Burne Hogarth v. Edgar Rice Burroughs, Inc.*, 342 F.3d 149, 166 (2d Cir. 2003).

"Works of the federal government are not subject to copyright protection," but they may "form part of a compilation" for purposes of copyright. *Matthew Bender & Co. v. W. Publ'g Co.*, 158 F.3d 674, 679 (2d Cir. 1998) (citing 17 U.S.C. § 105). "The Copyright Act defines 'compilation' as 'a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship.'" *Id.* (quoting 17 U.S.C. § 101); *see also We the Protestors, Inc. v. Sinyangwe*, --- F. Supp. 3d ---, 2024 WL 1195417, at *7 (S.D.N.Y. Mar. 20, 2024) (noting "the Copyright Act's definition of a copyrightable compilation" is "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship" (emphasis omitted) (quoting 17 U.S.C. § 101)); *Vaad L'Hafotzas Sichos, Inc. v. Krinsky*, 133 F. Supp. 3d 527, 534 (E.D.N.Y. 2015) ("In a compilation, the preexisting material is 'selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship.'" (quoting 17 U.S.C. § 101)).

10

"The 'originality' standard requires that the work result from 'independent creation' and that the author demonstrate that such creation entails a 'modicum of creativity.'" *Matthew Bender*, 158 F.3d at 681 (emphasis omitted); *see also Keeling v. Hars*, 809 F.3d 43, 50–51 (2d Cir. 2015) ("[T]he Copyright Act itself explicitly protects 'compilations,' and a long line of case law confirms that copyright covers compilations of raw data or facts, elements which are not themselves protectable, so long as the compilation itself (including the arrangement of those elements) possesses some 'minimal degree' of creativity, 'no matter how crude, humble or obvious'" (first citing 17 U.S.C. § 103; and then quoting *Feist Publ'ns*, 499 U.S. at 345)); *Key Publ'ns, Inc. v. Chinatown Today Publ'g Enters., Inc.*, 945 F.2d 509, 512 (2d Cir. 1991) (noting the language of 17 U.S.C. § 101 "suggests three requirements for a compilation to qualify for copyright protection: (1) the collection and assembly of preexisting data; (2) the selection, coordination or arrangement of that data; and (3) a resulting work that is original, by virtue of the selection, coordination, or arrangement of the data contained in the work" (quoting *Feist Publ'ns*, 499 U.S. at 357); *Sinyangwe*, 2024 WL 1195417, at *7 ("The Supreme Court has held in the context of compilations that '[o]riginality requires only that the author make the selection or arrangement independently (*i.e.*, without copying that selection or arrangement from another work), and that it display some minimal level of creativity." (quoting *Feist Publ'ns*, 499 U.S. at 358)). "The Copyright Act protects original and minimally creative selection of preexisting, unprotected materials (such as facts) for inclusion in a work, as well as original and creative arrangement of those materials," but "[t]he creative spark is missing where: (i) industry conventions or other external factors so dictate selection that any person composing a compilation of the type at issue would necessarily select the same categories of information, or (ii) the author made obvious, garden-variety, or routine selections." *Matthew Bender*, 158 F.3d at 681–82 (citations omitted). "Thus, when it comes to the selection or arrangement of

11

information, creativity inheres in making non-obvious choices from among more than a few options," and therefore "creativity in selection and arrangement . . . is a function of (i) the total number of options available, (ii) external factors that limit the viability of certain options and render others non-creative, and (iii) prior uses that render certain selections 'garden variety.'" *Id.* at 682–83.

Plaintiff does not adequately plead that the Study Guide Additions are sufficiently original such that they are covered by the Copyright Act. Plaintiff alleges in the Amended Complaint only that the FEMA Study Guide has "collected all the multiple-choice questions and answers that FEMA potentially may use to conduct its examinations for that course" and "modifies the collected multiple-choice questions" by "identif[ying] the answer for each FEMA question by highlighting the correct answer in bold and red."[8] (Am. Compl. ¶¶ 12–15.) Therefore, Plaintiff does not allege that the copyright involved "selection and arrangement of" the questions and answers obtained from FEMA, but rather that the only difference between FEMA's questions and answers and those included in the study guide is (1) the collection of all questions into one consolidated group, and (2) the highlighting of the correct answer in bold and

---

[8] As discussed in section II.b.1, *supra*, the Court does not consider Plaintiff's allegations in the Amended Complaint that the Study Guide Additions also included references to sections of the course materials to review, as those references are not included in the deposit copy currently before the Court. Nevertheless, the Amended Complaint alleges only that it "adds a reference next to each correct answer which points students to the location in the course materials that is the source for the correct answer." (Am. Compl. ¶ 16.) The Amended Complaint therefore does not allege that it references "only certain sources [Pickelhaupt] believed would be most useful," or "made a judgment call as to which materials to include in the FEMA Study Guide, choosing those he believed would be most useful to the customers of that guide," as Plaintiff suggests in its Opposition. (Pl.'s Opp'n 10.) This is thus similarly insufficient to establish that the Study Guide Additions are an original work covered by the Copyright Act.

12

red.⁹ (*Id.*) Plaintiff does not allege that Pickelhaupt selected particular questions, selected the arrangement of answers, or chose which answers were correct and incorrect in determining which answers to highlight, and therefore has not alleged that he exercised any creativity in compiling the FEMA questions and answers. (*Id.*); *see, e.g.*, *Silverstein v. Penguin Putnam, Inc.*, 368 F.3d 77, 80 (2d Cir. 2004) ("[I]f the selection process imbues a compilation with the requisite creative spark, the compilation may be protected so long as there are indicia that principles of selection (other than all-inclusiveness) have been employed."); *Matthew Bender*, 158 F.3d at 683–88 (concluding the district court had not erred in determining the compilation was not sufficiently original where the plaintiff (1) added captions, courts, and date information to a compilation of judicial decisions, (2) selected and arranged attorney information and added it to the compilation, (3) added subsequent procedural developments to the compilation, and (4) determined which parallel or alternate citations to include in the compilation).

The Court therefore grants Smith's motion to dismiss the Amended Complaint.

### c. Leave to amend

Plaintiff argues that, if necessary, the Court should grant it leave to amend the Amended Complaint to add additional allegations of fact. (Pl.'s Opp'n 11–12.) Plaintiff contends that the

---

⁹ Plaintiff relies heavily on factual allegations contained only in the Pickelhaupt Declaration, attached to Plaintiff's Opposition but not alleged in the Amended Complaint, to support its arguments regarding the allegedly creative decision making that contributed to the final copyrighted FEMA Study Guides. (*See* Decl. of David Pickelhaupt ("Pickelhaupt Decl."), annexed to Pl.'s Opp'n as Ex. A, Docket Entry No. 54-1.) The Court may not consider any factual allegations introduced for the first time in the Pickelhaupt Declaration or in Plaintiff's Opposition. *See, e.g.*, *Regan v. Vill. of Pelham*, No. 19-CV-7987, 2021 WL 1063320, at *4 (S.D.N.Y. Mar. 19, 2021) ("The [c]ourt may not and has not considered any factual allegations that were introduced for the first time in either [the p]laintiff's opposition affidavit or briefs because 'courts cannot consider new factual assertions in an affidavit submitted in opposition to a motion to dismiss.'" (quoting *Colliton v. Bunt*, 709 F. App'x 82, 83 (2d Cir. 2018))); *see also Faulkner v. Beer*, 463 F.3d 130, 135 n.3 (2d Cir. 2006) (concluding that a declaration submitted in opposition to the defendants' motion to dismiss the amended complaint was "not . . . properly before" the court).

Pickelhaupt Declaration demonstrates that Plaintiff is able to supply additional information sufficient to demonstrate the creativity involved in creating the FEMA Study Guide. (*Id.* at 11.)

Smith argues that any further amendment would be futile because the sole aspect of the Study Guide Additions that is covered by the '215 Registration is the highlighting of the correct answer to the multiple-choice questions. (Def.'s Reply 12–14.)

The Court grants Plaintiff's request for leave to file a second amended complaint containing additional allegations of fact. The Pickelhaupt Declaration indicates that there may be additional factual allegations relevant to a determination of whether the FEMA Study Guide is a sufficiently original compilation such that the '215 Registration is a valid copyright. (Pickelhaupt Decl.); *see, e.g., Fraser v. City of New York*, No. 20-CV-5741, 2022 WL 3045524, at *10 (E.D.N.Y. Aug. 1, 2022) (permitting plaintiff leave to file a second amended complaint where "the record does not indicate that she has repeatedly submitted deficient pleadings"); *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (noting that Rule 15 of the Federal Rules of Civil Procedure provides that "[l]eave to amend should be 'freely give[n] . . . when justice so requires,' but 'should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party'" (second and third alterations in original) (first quoting Fed. R. Civ. P. 15(a)(2); and then quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008))); *see also Meyer v. Seidel*, 89 F.4th 117, 122 (2d Cir. 2023) (noting that leave to amend should be freely given). Because leave to amend should be freely given under Rule 15 of the Federal Rules of Civil Procedure, the Court grants Plaintiff leave to file a second amended complaint.

### III. Conclusion

For the reasons stated above, the Court grants Smith's motion to dismiss the Amended Complaint and grants Plaintiff leave to file a second amended complaint.

Dated: June 26, 2024
      Brooklyn, New York

                                          SO ORDERED:

                                          _____s/ MKB_____
                                          MARGO K. BRODIE
                                          United States District Judge